IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARCUS SINGLETON,

                              Petitioner,                    OPINION AND ORDER

          v.                                                 17-cv-898-wmc

DAVID J. MAHONEY,
Dane County Sheriff,

                         Respondent.

          Marcus Singleton is presently in custody in the Dane County jail and has petitioned

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his underlying March

4, 2014, conviction in the Circuit Court for Dane County for one count of third degree

sexual assault.[1]  Singleton is proceeding on two claims, both challenging the validity of his

guilty plea:  (1) his plea was not entered knowingly and voluntarily, having been based on

his counsel's incorrect advice that the victim's phone records did not show calls from

Singleton; and (2) the trial court violated Wis. Stat. § 971.08 during the plea colloquy by

failing to ask Singleton whether any promises, agreements or threats had been made in

connection with the plea.  As to the latter claim, had he been asked, Singleton asserts that

he would have told the trial court that he was promised that if the above phone records

---

[1] Singleton was released on extended supervision on or about February 4, 2020, and was placed in custody in the Dane County Jail in April 2020 after allegedly violating the terms of his extended supervision.  (Dkts. #38, 40.)  A review of records publicly available shows that he remains in custody in the Dane County jail; accordingly, the court has changed the case caption to reflect that Singleton's current custodian is the Dane County Sheriff.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases (proper respondent to habeas petition is person having custody of petitioner). Even if Singleton's current confinement may be for reasons unrelated to the conviction under attack, the instant petition is not moot.  *Cochran v. Buss*, 381 F.3d 637, 640-41 (7th Cir. 2004).

were found, then he could withdraw his plea.  For the reasons that follow, the court finds

that Singleton is not entitled to federal habeas relief on either claim.

FACTS[2]

## I.  Background

On or about January 16, 2012, a 16-year-old girl, referred to in the record as "D.D.,"

told police that she had been kidnapped and sexually assaulted around 2 a.m. by a black

male whom she did not know.  More specifically, D.D., who the prosecution represented

at sentencing "behaves socially as if she were an 11- or 12-year-old," due to mental

disabilities,[3] reported to police that she was outside on her back patio when a black male

approached her, "picked her up, put her over his shoulder, threatened to kill her," then

"carried her to a vehicle close by," "pulled down her pants, took off her clothes, and forcibly

raped her" without consent.  D.D. further reported that when the perpetrator used his cell

phone, she was able to jump out of his car and run home.  D.D.'s physical examination

corroborated her description of a sexual assault insofar as it showed "injuries consistent

with forced intercourse – a tear on her hymen and posterior fourchette, a bruise on her

hymen, and two small red bruises on her right breast area."  A DNA sample was also

collected from sperm found in D.D.'s underwear.

---

[2] These facts are drawn from the record of the state court proceedings, attached to respondent's
Answer.  (Dkt. #25.)

[3] Without contradiction from Singleton, the prosecutor specifically represented at sentencing that
D.D. was diagnosed with bipolar disorder, autistic behavior, ADHD, and a cognitive disability.
(Sentencing Tr. (dkt. #25-19) 11.)

Given the circumstances described that lead up to the reported assault, the police were apparently skeptical of D.D.'s account, and as importantly, they lacked any meaningful information as to whom the perpetrator might be.  Accordingly, they asked D.D. for permission to search her phone and computer to determine if she had communicated with someone who might have assaulted her.  D.D. initially resisted turning over her phone, but eventually agreed to do so.  Unfortunately, the police could not find anything on either D.D.'s phone or computer to suggest a possible perpetrator or that she had arranged an encounter with anyone.[4]

However, in September 2012, some six months after the reported sexual assault, law enforcement learned that a positive "hit" had been identified in the State's DNA databank between the DNA sample collected during D.D.'s physical examination and a DNA sample recently provided by Marcus Singleton, a 28-year-old black male whose physical features were consistent with D.D.'s general description of the person who assaulted her.  Singleton apparently had been ordered to provide his DNA sample after being found guilty of child enticement by a jury in February 2012 -- a charge for which he was on bail on the night that D.D. alleged she was assaulted.

After law enforcement obtained a new DNA sample from Singleton, which the State Crime Lab confirmed matched the DNA profile obtained from D.D.'s underwear, the state filed a criminal complaint against Singleton on March 28, 2013.  Specifically, Singleton was charged with:  (1) kidnapping in violation of Wis. Stat. § 940.31(1)(a) (Count 1); (2)

---

[4] The record does not indicate whether the police performed any forensic analysis of the phone or the computer, but it appears that they did not.

second-degree sexual assault in violation of Wis. Stat. § 940.225(2) (Count 2); two counts of felony bail jumping in violation of Wis. Stat. § 946.49(1)(b) (Counts 3 and 4); and one misdemeanor count of having sex with a child age 16 or older, in violation of Wis. Stat. § 948.09 (Count 5). The bail jumping counts were based on the fact that Singleton had been ordered by the court in the child enticement case to have no unsupervised contact with any minors (other than his own children) at the time of the alleged assault on D.D.

The kidnapping and second-degree sexual assault charges were both Class C felonies, meaning that Singleton faced potential sentences of up to 25 years of confinement and 15 years of extended supervision on each count. The bail jumping counts were Class H felonies, which each carried a sentence up to three years of confinement and three years of extended supervision. Thus, if convicted on all felony counts and the court imposed consecutive sentences, Singleton was facing a maximum possible term of imprisonment of 56 years and 36 years of supervision.

## II. Plea Hearing

In February 2014, Singleton and the State entered into a written plea agreement, which involved the State filing an Amended Information reducing the sexual assault charge from second to third degree sexual assault, to dismiss Counts 1 and 5 outright, and to dismiss and "read in" the bail jumping counts.[5] In exchange for this reduction, Singleton agreed to plead no contest to the reduced sexual assault charge. As a class G felony, the

---

[5] Under Wis. Stat. § 940.225(3), "[w]hoever has sexual intercourse with a person without the consent of that person" is guilty of third degree sexual assault. It differs from second degree sexual assault in that the State need not prove the defendant used or threatened force or violence. *Cf.* Wis. Stat. § 940.225(2).

amended charge to which Singleton agreed to plead no contest meant he would now face a maximum sentence of 5 years in prison and 5 years of extended supervision, although the parties did not reach an agreement concerning a particular sentence.

The circuit court held a plea hearing on February 7, 2014.  (2/7/14 Plea Hrg. Tr. (dkt. #25-18).)  After the parties put their agreement on the record, the court accepted the Amended Information.  (*Id*. at 2-3.)  The court then asked the prosecutor whether "any agreements or promises or inducements [had] been offered to Mr. Singleton other than the amendment, of course, to get him to enter a plea?"  (*Id*. at 3.)  The prosecutor replied "no," while Singleton's retained counsel, Jessa Nicholson, pointed out their agreement that both sides "will be free to argue" an appropriate sentence.  (*Id*. at 3-4.)

Turning to Singleton, the trial court confirmed that he had been paying attention to everything discussed up to that point, and that he understood the terms of the plea agreement, the amended charge he was facing, and the consequences of his no contest plea to that charge, including the maximum penalties that could apply.  (*Id*. at 4-5.)  The court further confirmed that Singleton had signed a Plea Questionnaire and Waiver of Rights form, that he had reviewed it carefully with his attorney, and that he had no questions about it.  (*Id*. at 5-6.)  On the plea questionnaire, among other things, Singleton agreed to the following statement:

> I have decided to enter this plea of my own free will.  I have not been threatened or forced to enter this plea.  No promises have been made to me other than those contained in the plea agreement.

The court then proceeded to go through each of the constitutional rights that Singleton was waiving as a result of pleading to the reduced charge.  Singleton indicated

that he understood each of these rights, had had enough time to talk things over with Attorney Nicholson, and had no questions about the proceedings. (*Id*. at 6-9.)  The court next confirmed with defense counsel that (1) a factual basis existed for Singleton's plea to the reduced charge, (2) she had reviewed with him the elements and potential defenses, and (3) she was aware of no reason the court should not accept Singleton's plea.  Finally, the circuit court accepted Singleton's plea, finding that he was entering it knowingly, intelligently, and voluntarily, and found him "guilty" of the single count of third degree sexual assault in the Amended Information.  (*Id.* at 10-11.)

### III.  Sentencing

At sentencing on April 4, 2014, the prosecutor urged the court to impose the maximum possible punishment -- five years imprisonment to be followed by five years of extended supervision -- while Singleton's counsel argued for probation or, alternatively, one year of initial confinement followed by nine years of extended supervision.  Before making her sentencing recommendation, defense counsel also outlined for the court the circumstances that had led up to the plea agreement, emphasizing that Singleton had maintained "consistently since prior to the preliminary hearing" that he had met and communicated with the victim on an online dating site called "Tagged.com" before their encounter.  (Tr. of Sentencing (dkt. #25-19) 25.)  Counsel further reported that the police discovered a Tagged.com profile in D.D.'s name, and although they could not find a connection to Singleton on the site, D.D. reported that her friends would sometimes create profiles in other friends' names and log in to social media sites impersonating one another.

6

(*Id.* at 25-26.)  As for her own efforts to corroborate Singleton's account, counsel explained that:

> I have not been able to locate – my client's Tagged profile was taken down.  We were not able to retrieve the data associated with that profile.  His cellular telephone that he was using at the time was a TracFone.  And despite defense side efforts to obtain text message logs or communication from that as well as telephone calls from that, they do not have those records.
>
> So I am in a position and we were in a position going forward to trial such that my client had an alternative version of events that did have some indicia of reliability.  However, we were not able to fully verify those.

(*Id.* at 27.)  Still, counsel argued that there were reasons to question D.D.'s credibility based on statements her friends had made when interviewed, as well as her own initial refusal to turn her cell phone over to police.[6]  (*Id.* at 28.)  Counsel explained that "from the defense perspective, there were a number of issues that could have been raised at trial in terms of the overall credibility picture of this case and [the plea agreement] was a resolution that was the product of significant negotiations and was able to allow us to meet in the middle of these two divergent stories."  (*Id.*)

When the court asked whether forensic analysis had yielded any evidence, defense counsel responded:

> I can't answer that because I am not a computer expert.  So I can't speak to the technological aspects of it.
>
> What I can tell you is we were locked out of [Singleton's] defunct profile.  My investigator was not able to find anything on connecting [D.D.'s] profile.  I know the police reviewed the

---

[6] Although counsel did not elaborate, petitioner's submissions to this court include a copy of a motion in limine filed by Nicholson just days before the plea hearing seeking to allow admission of evidence that D.D. had made a false allegation of sexual assault in the past.  (Dkt. #27-1.)

> actual page of [D.D.] and the inbox that was saved, and things
> were deleted.  I don't believe a complete forensic analysis of
> the computer's hard drive was done, and cell phone records do
> not show correspondence between the two of them.
>
> * * *
>
> I can tell you that there are some limitations insofar as we were
> only able to retrieve [D.D.]'s cell phone records.  We weren't
> able to retrieve Mr. Singleton's, and we weren't able to get any
> type of text message records . . .

*Id*. at 34-35.

After counsel finished her presentation, the court asked Singleton if he had anything to say, to which Singleton replied, "no."  *Id*. at 39.  The court then sentenced Singleton to the maximum five years of imprisonment to be followed by four years of extended supervision.  In explaining its sentence, the court noted that there was no evidence to corroborate Singleton's version of events, but even assuming Singleton *had* communicated with someone who led him to D.D.'s address for what he thought was going to be a consensual encounter, the court found from personal observation of D.D. at the sentencing hearing that "it would have been very obvious, especially two years ago, that you're not dealing with a person who's a 17-year-old who's doing this.  And so to go further with whatever is just – it's just wrong." (*Id*. at 40.)

## IV. Post-Conviction Proceedings

### A.  Direct Appeal

Singleton filed a notice of intent to appeal, and new counsel was appointed to represent him.  On June 19, 2014, Singleton also filed his own, one-page motion to withdraw his no contest plea, on the following grounds:  (1) "phone records show that the

defendant called on the day in question"; (2) "discovery show that the defendant name and number is in the phone record as ('Kenny')"; and (3) "order at plea stated the withdrawal of no contest would be if new evidence is found."  (Dkt. # 25-2.)

The trial court denied Singleton's *pro se* motion without a hearing, explaining that because Singleton sought to withdraw his plea after sentencing, he would need to establish by clear and convincing evidence that a withdrawal was necessary to correct a "manifest injustice."  Moreover, before an evidentiary hearing was necessary, the court explained that he needed to allege sufficient facts -- not merely conclusory allegations -- to support such a claim.  (6/30/14 Order (Dkt. #25-3).)  The court then concluded that Singleton had not met this standard.

> Mr. Singleton, in conclusory fashion, asserts that phone records show that he called on the day in question.  Mr. Singleton does not explain what relevance this has to anything. Nothing about his submission suggests that the plea colloquy was defective in any way, or that his counsel was ineffective in any way.  In sum, Mr. Singleton fails to establish the need for an evidentiary hearing and nothing in his submission warrants withdrawal of his plea.

*Id*.

Singleton filed a follow-up letter expanding on his initial motion and seeking reconsideration.  (Dkt. #43-1.)  Singleton asserted that Attorney Nicholson had advised him to accept the plea agreement because she had been unable to substantiate Singleton's claim of having had prior phone contact with the victim.  In particular, Singleton represented that Nicholson had explained his phone number did not appear in the victim's phone records, which had been obtained from the cellular service provider.  Singleton further asserted that he followed counsel's advice and entered a plea of no contest based

9

on this lack of documentary evidence.   About an hour before the sentencing hearing, however, Singleton claimed that his counsel met with him and went over the phone records "one last time," at which point he was able to point out for the first time his "second" phone number on the logs, showing up under the name "Kenny."   Moreover, Singleton alleged that his wife had provided Attorney Nicholson with this second phone number after she advised that Singleton's first phone number did not appear in the victim's phone records, and that this second phone number was from a government paid Safelink/Tracfone phone.

Contrary to counsel's prior representations to him, therefore, Singleton maintains that the phone records actually show he *had* spoken with the victim several times before the alleged assault, just as he had claimed, and the victim must have deleted his calls from her call history.   Despite his advising Nicholson during their pre-sentencing meeting that his second phone number *was* on the victim's phone records, Singleton alleged further that Nicholson advised him to proceed with sentencing, even telling the court during the sentencing hearing that cell phone records did not show contact between Singleton and the victim.

Apparently with no response to this follow-up letter from the trial court, Singleton's appointed counsel filed a no-merit brief on direct appeal consistent with Wis. Stat. § 809.32 and *Anders v. California*, 386 U.S. 738 (1967).   Addressing potential appealable issues in the no-merit brief, counsel discussed two:   (1) whether Singleton's plea was knowing, voluntary, and intelligent; and (2) whether there were any grounds to challenge the sentence.   After noting that the circuit court "did not specifically inquire into whether

any promises or threats had been made to the defendant," counsel nonetheless concluded that Singleton could not establish that his plea was not entered knowingly, intelligently or voluntarily.  (No-Merit Br. (dkt. #25-4:12-13).)  Appellate counsel also found no basis to challenge the sentence.  Although his counsel did not address the allegations raised by Singleton in his *pro se* motion for plea withdrawal, Singleton filed a response to the no-merit brief, in which he argued that the phone records were newly-discovered evidence or, alternatively, that counsel's failure to discover them earlier constituted ineffective assistance of counsel.    (Response (dkt. #25-5) 3.)

After reviewing the record, the no-merit brief, and Singleton's response, the Wisconsin Court of Appeals found "no arguably meritorious appellate issues."  *State v. Singleton*, 2014AP2338-CRNM, 2016 WL 8578199, at *1 (Wis. Ct. App. Apr. 8, 2016) (affirming judgment of conviction and ordering denying postconviction motion for plea withdrawal) (unpublished), *rev. denied*, 2016 WI 98, 372 Wis. 2d 276, 891 N.W.2d 409. As an initial matter, the court noted that Singleton was "not alleging that he misunderstood the nature of the charges or any of the constitutional rights he was waiving," and that its own review of the record showed no defects in the trial court's plea colloquy. *Id*. at 2.

Next, the court found Singleton's allegations about the phone records "insufficient to obtain a hearing for several reasons." *Id*. at 3.  First, Singleton had not explained the significance of the phone records in his original motion for plea withdrawal, and the circuit court "was not obligated to entertain successive motions on the same topic." *Id*. at 3. Second, the court found that even taking Singleton's reconsideration letter into account, the phone records were not "newly discovered" after conviction because, by Singleton's

own admission, he identified his so-called second number on the records (under the name of "Kenny") about an hour *before* the sentencing hearing.  *Id*.  Third, the court found that Singleton's "allegations are insufficient to establish the deficient performance portion of a claim of ineffective assistance of counsel" because:   (1) the phone number was linked to a name other than Singleton's; (2) Singleton and his wife did not at first provide counsel with the second phone number; (3) Singleton did not specify whether he provided the second number to counsel before or after the plea had been entered; and (4) defense counsel did inform the circuit court at the sentencing hearing that she had found partial corroboration that the victim *did* have an account on the dating website on which the defendant had claimed to have contacted the victim.  *Id*. at 3-4.  Fourth, the court found that "Singleton's allegations would provide at best only limited support for the prejudice portion of an ineffective assistance claim," explaining:

> the victim's claim that she had never seen Singleton before was not necessarily inconsistent with having prior phone contact with him, given the victim's cognitive disabilities and Singleton's own assertion that he obtained the victim's contact information through a dating website.  Thus, it is unlikely that the phone records would have significantly undermined the victim's credibility—which was bolstered by the physical evidence of assault collected by the SANE nurse.

*Id*. at 4.

Finally, the Wisconsin Court of Appeals agreed with Singleton's appellate counsel that there was no basis to overturn the sentence, finding that the trial court had considered the standard sentencing factors, explained their application to the case, and imposed a sentence within the applicable penalty ranges.  *Id*. at 4-5.  The appellate court also found that although at the high end of the range, Singleton's sentence was not so excessive as to

12

shock public conscience, noting that he had avoided the possibility of additional prison time by the reading-in of the bail jumping felony offenses. *Id*. at 5.[7]

Singleton then petitioned the Wisconsin Supreme Court for review, arguing that the court of appeals had erred and violated his right to due process in rejecting his claims, as well as accusing the victim of "tampering with evidence" by deleting the phone calls. He further asserted that his plea was not voluntary because counsel misinformed him about being unable to locate the impeaching phone records. (Dkt. #25-7:9-10.) Specifically, Singleton asserted that:

> before Mr. Singleton was sentence[d] counsel review[ed a] newly-subpoena phone record. In th[is] record Mr. Singleton told counsel that one of . . . [the phone numbers] look[ed] to be his. Counsel incidentally called her office to see if in fact it was a number of his. Counsel stated to Mr. Singleton that it was not one of his number. In addition after sentencing at a visit the same day Mr. Singleton wife told him that she have given that number to his counsel months ago and she knew it was his.

(*Id*. at 6.) The Wisconsin Supreme Court denied Singleton's petition for review without comment.

## B. Collateral Review Under Wis. Stat. § 974.06

Singleton next filed a motion under Wis. Stat. § 974.06, alleging that the trial court had failed to satisfy its plea colloquy obligations when it failed to "inquire as to whether any promises or threats had been made to the defendant." (Dkt. #25-9:1.) Singleton asserted that if the court would have made this inquiry, it would have learned that the

---

[7] Of course, this was to say nothing of the 50 years additional imprisonment Singleton would have faced on the kidnapping and second degree sexual assault originally charged.

State and Singleton had agreed during a status conference that "if these U.S. Cellular records was found, Mr. Singleton could plea to a lesser charge and withdraw[] any other plea." (Dkt. #25-9:4.)

The circuit court denied Singleton's motion without a hearing, ruling that his claims were barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), which holds that a defendant is barred from raising a claim in a collateral, post-conviction motion that he could have but failed to assert in his first post-conviction motion. (1/6/17 Order (dkt. #25-13) 3-7.) Singleton did not appeal that decision.

### C. State Habeas Petition

Singleton next filed a state petition in the Wisconsin Court of Appeals for a writ of habeas corpus, claiming that appellate counsel erred in a variety of ways that related to Singleton's no-contest plea. (Dkt. #25-14.) The court of appeals denied Singleton's petition, holding that *State v. Tillman*, 2005 WI App 71, ¶¶ 19-20, 281 Wis. 2d 157, 696 N.W.2d 574, barred Singleton's claims because the no-merit procedure was followed in Singleton's prior appeal and nothing in the court's review of the record undermined the court's confidence in its earlier conclusions. (Dkt.#15-15:2-3.) Singleton filed a petition for review, which the Wisconsin Supreme Court denied.

## V. Federal Habeas Petition

Singleton's present habeas petition raises five grounds for relief: (1) his no-contest plea was not entered into knowingly and voluntarily because he entered it based on his lawyer's erroneous representation that she had been unable to locate the impeaching phone

records; (2) the trial court violated Wis. Stat. § 971.08 during the plea colloquy by failing to ask Singleton whether any other promises, agreements or threats had been made in connection with the plea, because Singleton would have said he was also promised that he could withdraw his plea if those phone records were found; (3) post-conviction counsel was ineffective for failing to advise Singleton of this plea colloquy violation; (4) the victim violated petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when she allegedly deleted calls received from petitioner on her call log; and (5) by destroying her phone records and lying about her contact with petitioner, the victim violated petitioner's due process rights.  This court ordered a response to the first two claims, while dismissing the remainder on the ground that they had no merit or failed to state a constitutional claim.  (10/11/18 Order (dkt. #13) 2-4.)

On January 23, 2019, respondent filed an answer to the petition, asserting that Singleton's claims were barred on grounds of procedural default and, in the alternative, failed on the merits.  (Answer (dkt. #25).)  On January 30, 2019, Singleton filed two separate responses to the answer, one addressing procedural default and the other addressing the claims on the merits.  (Dkt. ##26, 27.) On March 27, 2019, respondent filed a "Response Brief in Opposition," arguing that the petition should be dismissed on grounds of default.  Respondent did not address the merits of the petition, but said he "would file supplemental briefing, if ordered to do so."  (Response Br. (dkt. #31) 3.) Singleton filed a reply on April 1, 2019.  (Dkt. #32.)

OPINION

Singleton's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, which restricts a federal court's ability to grant habeas corpus relief to state prisoners in custody pursuant to a state court conviction.  First, federal courts may grant habeas corpus relief only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Second, a person in custody pursuant to a state court conviction cannot seek federal relief until he exhausts the remedies available in the state courts.  § 2254(b).  *See also Rose v. Lundy*, 455 U.S. 509, 518 (1982).  Third, as to any federal claims that were adjudicated on the merits by a state court, a federal court may grant habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).  *See also Woods v. Donald*, 575 U.S. 312, 315 (2015).

Regarding exhaustion, an application for writ of habeas corpus from a person in state custody shall not be granted unless it appears that (a) the applicant has exhausted state remedies, or (b) there is no available state corrective process or circumstances exist that render such process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). To exhaust a claim, the petitioner must have provided the state courts with a full and fair opportunity to review his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A specific claim is not considered exhausted if the petitioner "has the right under

16

the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). This requires the petitioner to appeal adverse state court decisions all the way to the state supreme court when doing so is part of the ordinary appellate review procedure in that state. *O'Sullivan*, 526 U.S. at 847. This exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights". *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam).

If a petitioner failed to present his claim at all levels of state court review and no state court remedies remain, he is said to have "procedurally defaulted" his federal claim. *See Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). Another distinct way that a petitioner may procedurally default a federal claim comes from the independent and adequate state ground doctrine, which precludes review "where the state courts declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)); *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) ("A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time -- as state rules define those courts, ways, and times."). Finally, a "[p]rocedural default may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas*, 822 F.3d at 386 (quoting *Coleman*, 501 U.S. at 750).

17

## I.  Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was constitutionally ineffective for failing to identify his so-called "second" phone number on the victim's cell phone contact log or the records from her service provider.  Petitioner asserts that his lawyer's performance was deficient because she "failed to see the evidence that was right in front of her."  As he did in response to his appellate counsel's no-merit brief in the Wisconsin Court of Appeal, petitioner asserts that:  (a) the number that trial counsel allegedly overlooked -- 608-320-0408 -- was his "second" phone number; and (b) the victim's phone call log showed this as a number belonging to someone named "Kenny," whom the victim had identified as her cousin when questioned by police.  (Reply Br. (dkt. #32) 2.)  Although not stated in his petition, petitioner asserted in his state court filings that he became aware that this phone number appeared in D.D.'s phone records when he and counsel reviewed those records shortly before his sentencing hearing, and further that, at some unspecified date before then, petitioner's wife had provided this same phone number to petitioner's counsel as one of his.  Petitioner asserts that if he had known evidence existed to corroborate his account, then he would not have pleaded no contest to the reduced charge, but instead would have gone to trial.  *Id*.

A claim of ineffective assistance of counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance deprived the defendant of a fair trial, *id*. at 687–88. When, as here, the

defendant contends that he received ineffective assistance of counsel during the plea process, he can satisfy *Strickland*'s first prong by showing that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To satisfy the prejudice prong, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.  More specifically, where counsel's alleged error is a failure to investigate or discover potentially exculpatory evidence,

> the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change [her] recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id*.  In other words, a petitioner challenging a guilty plea based on misinformation from his attorney must show "that a decision to reject the plea bargain would have been rational" had he received the proper advice.  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Under Wisconsin law, it is a prerequisite to appellate review of an ineffective assistance claim that the challenged attorney explain his or her actions at a postconviction evidentiary hearing.  *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).  The postconviction court must hold a *Machner* hearing if the defendant's motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief."  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  Moreover, the court may deny a postconviction motion for a hearing:  "if all the facts alleged in the

motion, assuming them to be true, do not entitle the movant to relief; if one or more key factual allegations in the motion are conclusory; or if the record conclusively demonstrates that the movant is not entitled to relief." *Id*. at ¶ 2, 274 Wis. 2d 568, 682 N.W. 2d 433 (citing *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), and *Nelson v. State*, 54 Wis. 2d 489, 497, 195 N.W.2d 629 (1972)).   Defendants seeking a post-conviction motion must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how" in order to allow the court to assess the claim and determine whether those facts, if true, are sufficient to entitle the defendant to relief. *Id*. at ¶ 23.  A motion would be entirely conclusory, for example, if it alleged no facts and stated only that counsel was ineffective for not preparing adequately for trial. *Id.* at ¶ 21.

## A. Procedural Default

Respondent argues that petitioner procedurally defaulted his ineffective assistance claim by failing to comply with *Allen*'s procedural requirements for obtaining an evidentiary hearing.[8]  A petitioner's failure to comply with a state procedural rule bars federal review

---

[8]Petitioner argues that this court should not consider respondent's procedural default defense because it is in violation of Paragraph 5 of the court's order directing a response to the petition, which stated:

> **Motions to Dismiss**.  If the state contends that the petition is subject to dismissal on its face – on grounds such as the statute of limitations, an unauthorized successive petition, lack of exhaustion or procedural default – then it is authorized to file within 30 days of this order, a motion to dismiss . . .

only when the last state court to issue an opinion on a petitioner's federal claim – here, the Wisconsin Court of Appeals -- has resolved that claim on an "adequate and independent" state ground. *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). An *independent* state ground exists "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)). A state law ground is *adequate* "when it is a firmly established and regularly followed state practice at the time it is applied." *Id*.

Respondent's procedural default argument is weakened at the outset by the Wisconsin Court of Appeals' failure to cite *Allen* or its predecessors *Bentley* and *Nelson*. Even if this court were to *infer* that the court relied on *Allen*, however, respondent's procedural default argument would still fail. Indeed, respondent's argument rests primarily on *Lee v. Foster*, 750 F.3d 687 (7th Cir. 2014), in which the Seventh Circuit held that "the *Allen* rule is a well-rooted procedural requirement in Wisconsin and is therefore adequate." *Id*. at 694 (citing *State v. Negrete*, 343 Wis. 2d 1, 819 N.W.2d 749 (2012); *State v. Balliette*,

---

(10/11/18 Order (dkt. #13) 5.)  Petitioner argues that respondent's procedural default argument, asserted in its response brief filed March 27, 2019 (dkt. #31), is effectively a motion to dismiss that should have been filed by November 11, 2018.  Although the court agrees that the response should have been labeled a motion to dismiss normally subject to the 30-day filing date, the provision of this court's order authorizing respondent to file a motion to dismiss states that it applies only where the respondent contends the petition may be dismissed "on its face," meaning without the need to review any of the records of the state court proceedings.  Arguably, respondent's procedural default argument is not a "facial" motion insofar as it requires review of the relevant state court decisions.  Moreover, the order "authorizes," but does not require, the filing of a motion to dismiss within 30 days.  Accordingly, the court finds respondent's procedural default argument to be properly and timely raised.

336 Wis. 2d 358, 805 N.W.2d 334 (2011); *State v. Love*, 284 Wis. 2d 111, 700 N.W.2d

62 (2005); *State v. McDougle*, 347 Wis. 2d 302, 830 N.W.2d 243 (Ct. App. 2013)).

Even so, as Judge Adelman has persuasively argued, *Lee*'s holding that *Allen* is an

*adequate* state rule does not mean that a Wisconsin court's reliance on *Allen* will always be

*independent* of the merits of the federal claim.  *Walker v. Pollard*, No. 18-C-0147, 2019 WL

136694, at *6 (E.D. Wis. Jan. 8, 2019), *reconsideration denied*, No. 18-C-0147, 2019 WL

4219429 (E.D. Wis. Sept. 4, 2019).  Specifically, Judge Adelman opined in *Walker* that a

Wisconsin court's reliance on the *Allen* rule will *rarely* be independent of the federal claim:

> Because the *Allen* rule requires a court to apply the relevant
> substantive law, in cases in which the relevant substantive law
> is federal, the *Allen* rule cannot be "independent" of the federal
> question for purposes of the independent-and-adequate-state-
> ground doctrine. Under that doctrine, "when resolution of the
> state procedural law question depends on a federal
> constitutional ruling, the state-law prong of the court's holding
> is not independent of federal law."  *Ake v. Oklahoma*, 470 U.S.
> 68, 75 (1985); *see also Stewart v. Smith*, 536 U.S. 856 (2002).
> Here, to apply the *Allen* rule to a federal constitutional claim,
> a Wisconsin court will have to make a federal constitutional
> ruling. Namely, it will have to determine whether the facts
> alleged in the postconviction motion, if proved to be true,
> would entitle the movant to relief under federal law. For
> example, to determine whether the motion entitles the movant
> to a hearing on an ineffective-assistance claim, the court will
> have to determine whether the motion alleges facts that, if true,
> would entitle the movant to relief under *Strickland v.
> Washington*. Thus, in most cases, the *Allen* rule will not be
> independent of federal law.

2019 WL 136694, at *6.

In Judge Adelman's view, a Wisconsin court can reject a federal claim under *Allen*

without considering the merits of that claim in one situation only:  "when a court rejects a

claim on the ground that it was presented in the postconviction motion in an entirely

conclusory fashion[.]"  *Id*.  This would occur, for example, if the defendant alleged that trial counsel rendered ineffective assistance because he did not adequately prepare for trial, but provided no facts alleging "what trial counsel did, failed to do, or should have done." *Id*. at *6 (comparing this type of *Allen* ruling to "a waiver or forfeiture rule, such as a rule that a court will deem waived any argument that is not adequately developed in the party's brief.") (citation omitted).  Judge Adelman found that the defendant's postconviction motion in *Lee* fell into that category, noting that "the state court rejected the motion on the ground that it contained only conclusory allegations."  *Id*. at *7.

In contrast, Judge Adelman noted that Walker's motion alleging that his counsel was ineffective for allowing a biased juror to sit on his jury was "not entirely conclusory; he provided at least some factual details, including the facts establishing the juror's motive for being biased against him and the fact that he told both trial and appellate counsel about the alleged bias"; plus, the Wisconsin Court of Appeals in *Walker* had "rejected the claim on the ground that the postconviction motion failed to allege certain facts that the court deemed necessary to success on the federal claim."  *Id*.  As such, Judge Adelman found the Wisconsin Court of Appeals' ruling *was* intertwined with federal law and not an independent state law ground for decision.  *Id*.  Other district courts have applied *Lee* in the same fashion.  *Accord Triplett v. Smith*, No. 17-C-660, 2018 WL 3130654, *7 (E.D. Wis. June 26, 2018) (finding *Lee*'s holding regarding the adequacy of the *Allen* rule limited to cases in which "there were no facts supporting the petitioner's conclusory allegation that his trial attorney was ineffective."); *Sulla v. Hepp*, No. 17-CV-987, 2019 WL 1206941, *3 (E.D. Wis. Mar. 14, 2019) (declining to find procedural default under *Lee* where Wisconsin

Supreme Court cited *Allen* but "considered in detail the merits of Sulla's argument that his plea was involuntarily made.").

Following the persuasive reasoning in *Walker, Triplett* and *Sulla*, this court reaches the same conclusion with respect to Singleton's allegations of ineffective assistance of counsel as asserted in his follow-up letter to the trial court, which were the focus of the Wisconsin Court of Appeals' decision.[9]  Specifically, although the trial court ignored these allegations, the Wisconsin Court of Appeals found that even if true, the allegations were "insufficient" to show deficient performance and provided only "limited support" for a finding of prejudice.  Specifically, on the performance prong, the court found that petitioner had failed to allege certain key facts necessary to show that his alleged failure to investigate caused her to provide bad advice in connection with the plea, since even petitioner alleges counsel only became aware *after* petitioner entered his plea that he supposedly had a second phone number.  As for the prejudice prong, the court of appeals also considered petitioner's assertion that he would have gone to trial if records existed to establish a link between him and D.D., but found it was "unlikely that the phone records would have significantly undermined the victim's credibility."  *Id*. at 4.  Thus, even assuming petitioner's allegations were true, the court of appeals found that they failed to establish an ineffective assistance of counsel claim under *Strickland*.  Because the court of

---

[9] Petitioner's initial, one-page motion to the trial court (dkt. #25-2) was so lacking in facts that it falls into that category of cases where a dismissal under *Allen* would be both adequate and independent to support the judgment.  Nevertheless, although noting that the trial court was not required to consider petitioner's follow-up letter, the Wisconsin Court of Appeals did not limit its review to petitioner's initial motion but reviewed the substance of his allegations in his follow-up letter, and it is that review on which respondent appropriately focuses his procedural default argument.

appeal's disposition of petitioner's ineffective assistance claim was intertwined with the merits, federal review of the claim is not barred under *Lee.*

### B.  Merits

Getting to the merits ultimately does petitioner little good, however, since this court agrees with the Wisconsin Court of Appeals' reasoning in this case.  As noted above, a federal court may grant habeas relief with respect to a claim that a state court adjudicated on the merits only when the state court's decision was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts.  *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner."  *Id*.

This is, and was meant to be, an intentionally difficult standard to meet.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petition is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Nevertheless, petitioner argues that the Wisconsin Court of Appeals improperly applied the test for prejudice set forth in *Hill v. Lockhart*, 474 U.S. 52, when it found his allegations provided only "limited support" for the prejudice portion of an ineffective assistance claim.  (Response (dkt. #27) 2.)  In particular, petitioner now "swears" that he agreed to the terms of the plea bargain only because his counsel told him without evidence to corroborate his claim that he had prior phone contact with the victim, she could not advise him to go to trial; thus, had he realized such evidence existed, he would have gone to trial.  (*Id*. at 5.)  He further argues that the court of appeals' decision was based on an unreasonable determination of the facts because he was denied an evidentiary hearing to establish what counsel and he discussed leading up to his decision to enter into the plea bargain.  (*Id*. at 6.)

Contrary to petitioner's understanding, the prejudice inquiry under *Hill* does not depend *solely* on the petitioner's subjective assessment about what he would have done had counsel properly investigated the case.  As noted above, in a failure-to-investigate case, the prejudice inquiry considers whether "discovery of the evidence would have led counsel *to change [her] recommendation as to the plea*," which, in turn, depends largely on "a prediction whether the evidence likely would have changed the outcome of a trial."  *Hill*, 474 U.S. at 59 (emphasis added). *See also Gish v. Hepp*, 955 F.3d 597, 607 (7th Cir. 2020) (to establish ineffective assistance claim based on counsel's failure to investigate an involuntary intoxication defense, defendant had to show reasonable probability that he would have gone to trial on that defense, "with the answer 'depend[ing] largely on whether the affirmative defense likely would have succeeded at trial.'") (quoting *Hill*, 474 U.S. at 59),

26

*cert. denied*, No. 20-5651, 2020 WL 6385916 (U.S. Nov. 2, 2020).  Thus, the court of appeals properly considered petitioner's allegations about the phone records in the broader context of whether they would likely have changed the outcome at trial.

As that court observed, records showing prior internet or phone contact between petitioner and D.D. would not have disproved D.D.'s statement that she had never "seen" petitioner before nor the physical evidence corroborating her claim of a sexual assault collected by the SANE nurse.  Moreover, petitioner's claim that he suddenly recognized the so-called second phone number and the name "Kenny" were associated with him, weakens any force this evidence may have.  In addition, even *before* the plea and alleged discovery of the phone records, petitioner's counsel represented that there were a "number of issues that plaintiff could have been raised at trial in terms of the overall credibility picture of this case," including:  (1) the strange circumstances of the alleged assault; (2) the discovery that D.D. had a Tagged.com profile in her name; (3) D.D.'s refusal and extreme agitation when asked to turn her cell phone over to police; and (4) statements by D.D.'s friends that "cause[d] some significant concerns about her credibility or her presentation."  (Sentencing Tr. (dkt. #25-19) 27-28.)  While evidence suggesting that petitioner not only had prior contact with D.D., but that D.D. may have deleted evidence of those calls from her phone before turning it over to police may have been a helpful piece of evidence, the victim's obvious vulnerabilities and young age noted by the trial court, along with evidence of a violent sexual assault, make it difficult to disagree with the state appellate court's finding that it would not have materially improved petitioner's chances of acquittal, such that it would not have been rational for him to reject the plea bargain

and take his chances at trial, particularly since he was facing up to 56 years in prison, rather than a *maximum* of 5 years.

Even if the court were to acknowledge *some* argument for holding an evidentiary hearing on prejudice, however, this finding does not help him, since the Wisconsin Court of Appeals' conclusion on deficient performance was plainly reasonable under 2254(d). As that court recognized, Attorney Nicholson's alleged failure to recognize petitioner's supposed second phone number on the victim's logs could only have affected her advice concerning his plea if she was aware of it *before* advising him to accept the State's plea offer. Petitioner failed to offer any evidence establishing a failure on her part in not recognizing this number sooner, supporting his claim with nothing but his own, vague statement that his wife provided the number to counsel sometime before the *sentencing* hearing. Whether petitioner could even establish that he had a second phone number of 608-320-0408 is doubtful, given his failure to ever produce: (1) an affidavit or documentary support for his assertion that the number 608-320-0408 belonged to him; (2) an affidavit from his wife stating when, how, or to whom she supposedly provided this phone number; or (3) an affidavit from Attorney Nicholson acknowledging that she was aware that petitioner had a second phone number of 608-320-0408 at any time, much less before his plea.

Regardless, petitioner's meager statement was certainly not enough to carry petitioner's burden of establishing deficient performance, particularly where the record strongly suggests otherwise. Most notably, Attorney Nicholson's remarks at the sentencing hearing reflect an understanding on her part that petitioner only had *one* phone number on the night of the alleged assault, something petitioner did not even attempt to contradict.

Indeed, petitioner's unexplained silence at the sentencing hearing is patently incredible given his current claims that:  (1) he recognized his second number on the victim's subpoenaed phone records *an hour* before the sentencing hearing; and (2) he had been assured of his right to withdraw his plea if such evidence were found.  Moreover, counsel's remarks at the hearing make plain that she took petitioner's allegations seriously, had hired an investigator in an attempt to substantiate them, and had been unable to corroborate petitioner's claim that D.D. had a profile on a dating website.  In light of counsel's investigative efforts, along with petitioner's failure to allege sufficient facts showing that Nicholson was aware of his "second" phone number *before* advising petitioner to accept the State's plea offer, the Wisconsin Court of Appeals' conclusion that petitioner could not establish deficient performance was an imminently reasonable application of the *Strickland* standard based on the allegations petitioner advanced.

As the Seventh Circuit has said, federal habeas relief from state convictions is "reserved for those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision–making about federal constitutional claims."  *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc).  At minimum, the state courts' decision-making in this case under *Strickland* was not *un*reasonable.  Regardless, because fairminded jurists could certainly agree with the Wisconsin Court of Appeals' conclusion that petitioner had failed to allege facts establishing his counsel's performance was deficient, petitioner is not entitled to relief on this claim.

**II. Defect in Plea Colloquy**

Petitioner's other claim to a defect in his plea colloquy fares no better.  Under the Fourteenth Amendment's guarantee of due process, a state trial court may accept a plea of guilty or no contest only when it has been made knowingly, voluntarily, and intelligently. *Brady v. United* States, 397 U.S. 742, 747 n. 4 (1970); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  This means that defendant needed to have real notice of the nature of the charges against him, *Henderson v. Morgan*, 426 U.S. 637, 645 (1976), understood the consequences of his plea, including the nature of the constitutional protection he was waiving, *Brady*, 397 U.S. at 755, and possessed an understanding of the law in relation to the facts.  *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

To ensure a defendant's plea satisfies these standards, trial courts in Wisconsin must comply with Wis. Stat. § 971.08(1) and the duties outlined in *State v. Bangert*, 131 Wis. 2d 246, 261, 389 N.W. 2d 12, 21 (1986), which states that before accepting a defendant's guilty plea, among other things, the court must address the defendant personally to determine that he is making his plea voluntarily with an understanding of the nature of the charge and the potential punishment if convicted.  And among the questions the trial court is to ask the defendant is whether any threats or promises had been made in order to get him to enter his plea.  *State v. Brown*, 2006 WI 100, par. 35, 293 Wis. 2d 594, 716 N.W. 2d 906.

Petitioner contends that the trial court failed to ask this question in particular, and incredibly that had it done so, petitioner would have said that the State and he had agreed to a side-deal during a status conference just three days before that "if phone records [were]

found the court custodian would not have to be called." (Br. in Supp. (dkt. #2) 8.)[10] Petitioner further asserts that he "was told" that this meant the State was agreeing petitioner could withdraw his plea if D.D.'s cell phone records were located.

Respondent argues petitioner procedurally defaulted this claim by failing to present it through one complete round of state review, including levels at which review is discretionary rather than mandatory.  *See Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004)(citing *O'Sullivan*, 526 U.S. at 845).  The court agrees.  As noted previously, the Wisconsin Court of Appeals addressed the adequacy of the trial court's plea colloquy on direct appeal, agreeing with appellate counsel that any challenge to the voluntariness of the plea based on a defective colloquy had no merit.  While petitioner appealed other parts of the court of appeals' decision to the Wisconsin Supreme Court, he did *not* raise the issue of the adequacy of the plea colloquy, nor did he claim that his plea was not entered knowingly or intelligently apart from his lawyer's failure to recognized his second phone number in the victim's phone records.  This was a default under *O'Sullivan*.

Moreover, although petitioner attempted to revive the claim by presenting it in a Wis. Stat. § 974.06 motion in the trial court, that court properly rejected it, finding the claim had already been litigated in his postconviction motion or appeal and, therefore, was

---

[10] In its Rule 4 order, this court noted that defects in the plea colloquy alone were insufficient to state a claim for federal relief, but could show that petitioner did not enter his plea knowingly and voluntarily.  The court further understood petitioner to be asserting that it was *his* attorney who told him he could withdraw his plea if the phone records were found.  (10/11/18 Order (dkt. #13) 3.)  In state court, however, petitioner asserted that this was something that the State and he had specifically agreed during a status conference.  Petitioner again maintains that posture in this court, failing to develop *any* separate argument to suggest that this allegation is part of his ineffective assistance of counsel claim.

barred under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W. 2d 157 (1994), and Wis. Stat. § 974.06(4).  Further, in *Perry v. McCaughtry*, 308 F.3d 682 (7th Cir. 2002), the Seventh Circuit found the *Escalona-Naranjo* rule to be an adequate and independent state ground that bars federal review, so long as the state court did not apply it "unexpectedly or freakishly."  *Id*. at 690; *see also Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).  Having reviewed the state court's order, this court can find nothing grossly inadequate or bizarre about its determination that petitioner's 974.06 motion was an attempt to reassert matters already litigated and barred under Wisconsin's procedural rules.  In any event, petitioner never appealed the trial court's decision, meaning that he "double defaulted" this claim.

Finally, petitioner filed a state petition in the Wisconsin Court of Appeals for a writ of habeas corpus, claiming that his appointed appellate counsel erred in a variety of ways related to his no-contest plea, including his failure "to raise that the plea colloquy was in violation of the U.S. Constitution." (Dkt. #25-14.)  Even if petitioner's attempt to raise his claim in this fashion could somehow excuse his previous failures to present the claim at all levels of the state's appellate review process, federal review would still be barred by his failure to comply with the state's procedural rules.  Specifically, the Wisconsin Court of Appeals ruled that petitioner's claims were barred under *State v. Tillman*, 2005 WI App 71, ¶¶ 19-20, 281 Wis. 2d 157, 696 N.W. 2d 574, which held that under *Escalona-Naranjo* and Wis. Stat. § 974.06(4), "a prior no merit appeal may serve as a procedural bar to a subsequent postconviction motion and ensuing appeal which raises the same issues or other issues that could have been previously raised."  Without reviewing the merits of petitioner's

claim, the court of appeals found the *Tillman/Escalona* bar applied because the no-merit procedure had been followed in petitioner's prior appeal, and nothing in that court's review of the record undermined these earlier conclusions. (Dkt.#15-15:2-3.) Thus, this is yet another independent and adequate state ground barring this court from reviewing the merits of petitioner's claim.

As noted previously, a federal court can overlook a state prisoner's failure to properly exhaust his state court remedies only if he shows either: (1) the cause for the default and resulting prejudice; or (2) that a fundamental miscarriage of justice will result if the court does not consider the merits of his claim. Petitioner has not attempted to show either, nor is there *any* indication in the record that he could do so. Accordingly, the court denies his claim related to alleged defects in the plea colloquy on grounds of procedural default.

## III.  Certificate of Appealability

Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [ ('COA') ] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). To obtain a COA under 28 U.S.C. § 2253(c), "a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Lavin*, 641 F.3d at 832.

This court's denial of petitioner's habeas claims relies on settled precedent and principles, whose application to Singleton's petition presents no difficult or close questions. Since the petition does not meet the standard for granting a certificate of appealability, the court will also deny a certificate of appealability.

ORDER

IT IS ORDERED that Marcus Singleton's petition for a writ of habeas corpus is DENIED.  No certificate of appealability shall issue.

Entered this 5th day of March, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge